# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 9, 2012 Session

## BLAIR WOOD, ET AL. v. TONY WOLFENBARGER, ET AL.

**Appeal from the Circuit Court for Anderson County**
**No. BOLA0314      Donald R. Elledge, Judge**

---

### No. E2011-01953-COA-R3-CV-FILED-AUGUST 15, 2012

---

Blair Wood and Gary Wood ("Plaintiffs") sued Tony Wolfenbarger and Brenda Wolfenbarger ("Defendants") alleging, in part, that Defendants had wrongfully cut down six trees on Plaintiffs' real property. After a trial, the Trial Court entered its judgment finding and holding, *inter alia*, that Defendants were liable for negligently cutting the trees, that the current market value of the timber cut was $840, and that Plaintiffs were entitled to a judgment in double the amount of the current market value of the timber pursuant to Tenn. Code Ann. § 43-28-312. Plaintiffs appeal to this Court alleging that the Trial Court erred in awarding damages based upon the timber value. We find and hold that the evidence preponderates against the finding that timber value was the correct measure of damages in this case. We modify the Trial Court's judgment to award Plaintiffs damages of $62,100 based upon the trunk formula method of valuation and affirm the judgment as so modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Blair N.C. Wood and James R. Creekmore, Blacksburg, Virginia, for the appellants, Blair Wood and Gary Wood.

Jack H. McPherson, Jr., Kingston, Tennessee, for the appellees, Tony Wolfenbarger and Brenda Wolfenbarger.

# OPINION

## Background

Plaintiffs own real property at 566 Mountain Road in Clinton, Tennessee. Defendants own real property at 572 Mountain Road in Clinton, which adjoins Plaintiffs' property. Plaintiffs' property includes a gravel road which Defendants had used since they purchased their property in 2006. Defendants incorrectly had assumed that the gravel road belonged to them. In May or June of 2009, Defendants had trees on both sides of the gravel road on Plaintiffs' property cut down. The six trees that were cut down were Eastern Red Cedars and were healthy mature trees when they were cut down. Plaintiffs sued Defendants, and the case was tried without a jury.

Jim Cortese, a practicing and consulting arborist who has run a tree service business in Knoxville, Tennessee since 1977, testified as an expert for Plaintiffs. Mr. Cortese holds a degree in forestry from the University of Tennessee and is one of only two or three board certified master arborists in the state of Tennessee, which Mr. Cortese stated is the highest grade one can achieve in certification as an arborist. Mr. Cortese visited Plaintiffs' property and examined the stumps of the cut trees. He stated that the trees that were cut were Eastern Red Cedar, Juniperous Virginiana.

Mr. Cortese was asked about different methods to value trees, and he testified:

There is what's called a cost approach where you consider the cost to repair the damages to the plants or replace them. And it basically simply reflects what it would cost to go repair the tree if you've got broken branches, pruning it back, trying to recreate the plant that was here.… There are various methods of that same cost approach. There's what's called a replacement cost. It's a method used when the plants are the size it can be replaced. The value is based upon (a) the cost to replace the same species of the same size and quality, (b) the cost of replacing one large plant with several smaller plants, and (c) the cost of replacing a large plant with a smaller plant, and the possible cash settlement.

You have the timber value which I mentioned. You have what is called a trunk formula method. It's a method used when the plant is normatively too large to be replaced. The value used is the cost of replacing the largest locally available plant and adjusting it for the size difference, species classification, condition classification, and location classification of the appraised tree.

You also can have a situation where if you were growing trees for like a Christmas tree farm where they were going to be taken, you could determine what the average growth would be over a period of time and prorate that over time. There are other ways, too.

He explained further:

The timber value is a means of determining tree value for a stand of, quote, timber that is normatively in a woods setting where you have large amounts of trees. And they are trees that are of sufficient size and character to being [sic] converted into an alternative product such as boards or any type of product that would be made out of wood - - barrels, red oaks - - excuse me - - white oaks are usually used for whiskey barrels because they hold water very intently and do not allow the whiskey to escape.

Mr. Cortese testified that in his opinion the timber value was not the appropriate method to use to determine the value of these trees. He explained: "It was my opinion that there were (a) not enough trees to justify a timber sale. It was - - the trees were not really - - they just wouldn't be suitable for a timber sale." He also explained that "a timber sale is always between a willing buyer and a willing seller. It [is] not a forced upon somebody valuation that they have to accept what the value of the trees are." He admitted when asked on cross-examination that he had calculated the timber value of the trees that were cut to be $840.

Mr. Cortese considered the replacement cost method to be one applicable method of valuing the trees in this case. He testified that he has successfully transplanted trees as large as the ones at issue in this case. Mr. Cortese valued the replacement cost for the trees at $161,300.

Mr. Cortese also used the trunk formula method to value the damages. He testified in detail about this method wherein he valued the first tree at $14,700; the second at $5,400; the third at $19,000; the fourth at $10,600; the fifth at $5,800; and the sixth at $6,600, for a total measure of damages of $62,100.

After trial, the Trial Court entered its judgment on April 8, 2011 finding and holding, *inter alia*:

that the defendants cut or caused to be cut trees located upon the plaintiffs' property; that the current market value of the timber cut was $840.00; that the cutting of the trees by the defendants was not intentional but rather a negligent

cutting entitling plaintiffs, under TCA 43-28-312, to a judgment in double the amount of the current market value of the timber.

In its Memorandum Opinion incorporated into the Judgment by reference, the Trial Court found and held, *inter alia*:

> [T]he Court further finds that every witness in this case I found credible. This is two trials that I've had today. I can assure you I can probably go three months and never have where I can state that every witness that appears in front of me has been credible.
>
> * * *
>
> I find that in this case there's been no proof as to the value that those trees added to the real property; none. And the only way that we could do that is to have testimony as to the before and after value of the property.
>
> * * *
>
> I find again that based upon the fact that there's no testimony before me concerning the value of the real property and the aesthetic value of that real property and how the real property's been damaged, I do not feel it appropriate at this time to award the $186,300 [sic] which was the first fee.
>
> I will follow 43-28-312 and award the value of the timber that has been taken times two.

Plaintiffs filed a motion to alter or amend, which the Trial Court denied. Plaintiffs appeal to this Court.

## Discussion

Plaintiffs raise one issue on appeal: whether the Trial Court erred in awarding damages based upon the timber value of the trees.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of

correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Specifically, Plaintiffs argue in their brief on appeal that the Trial Court erred in finding that because no evidence was presented regarding diminution of value that the proper measure of damages was the timber value. Plaintiffs assert that they presented evidence of damages and that they were not required to present all possible alternative measures of damages. Rather, they assert that if Defendants wanted the Trial Court to apply a different measure of damages than the two presented by Plaintiffs, those two being replacement cost and the trunk formula method, then Defendants had the burden to present evidence of this other measure of damages. We agree. *See, e.g., Conatser v. Ball*, No. M1999-00583-COA-R3-CV, 2001 Tenn App. LEXIS 569, at *34 (Tenn. Ct. App. Aug. 3, 2001), *no appl. perm. appeal filed*, (stating that plaintiffs were not required to prove the alternate measure of damages of diminution of value of property due to defendant's trespass, but that burden rested upon defendant to present such proof if defendant wanted the court to apply this measure).

Plaintiffs presented no evidence with regard to diminution of value. Neither, however, did Defendants. Neither the Trial Court nor this Court may award damages based upon a measure of damages when there is no evidence in the record regarding that measure of damages.

Evidence was produced at trial of three separate possible measures of damages: the timber value, the replacement value, and the trunk formula method. The Trial Court awarded damages based on the timber value pursuant to Tenn. Code Ann. § 43-28-312, which provides:

> **43-28-312. Cutting timber from property of another – Civil liability.**
> (a)(1) Civil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber.
> (2) If the timber is negligently cut from the property of another because the landowner for whom the timber is being cut has marked or designated the boundary of the landowner's property incorrectly, then the landowner is jointly liable for the double damages.
> (b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber.
> (c) Nothing in this section precludes an owner of property on which timber has been cut by another from recovering damages for loss of value other than commercial timber value, if any, of the timber negligently or intentionally cut.

(d) "Current market value," as used in this section, applies to the property in question that is standing timber; therefore, the current market value is that of the timber before being cut.

Tenn. Code Ann. § 43-28-312 (2007).

The evidence in the record on appeal preponderates against the finding that the timber value was the proper measure of damages in this case. The only witness to testify about the timber value, Mr. Cortese, specifically testified that timber value was an inappropriate measure of damages in this case because, among other reasons, there were not enough trees and because the particular trees were not suitable for a timber sale. The Trial Court found Mr. Cortese to be a credible witness, and there is no evidence to the contrary showing that timber value was the appropriate measure of damages in this case. The evidence preponderates against the finding that timber value was the appropriate measure of damages in this case because the only evidence presented shows that these trees were not suitable for a timber sale.

Defendants argue in their brief on appeal that because no evidence of diminution of value was presented, the timber value is the appropriate measure of damages pursuant to Tenn. Code Ann. § 43-28-312. The statute, however, clearly and unambiguously provides that "[n]othing in this section precludes an owner of property on which timber has been cut by another from recovering damages for loss of value other than commercial timber value, if any, of the timber negligently or intentionally cut." Thus, Plaintiffs were free to produce evidence of the measure of damages other than the timber value. Plaintiffs did produce such evidence in the form of replacement value and the trunk formula method.

We first consider the replacement value of the six trees as Plaintiffs vigorously maintain that is the appropriate measure of damages in this case. We note that the evidence in the record on appeal reveals that Plaintiffs purchased their real property, which consists of approximately 38 acres, in 2006 for $185,000. As such, it is unreasonable to argue that the proper measure of damages for the wrongful cutting of these six trees is the replacement value of $161,300, an amount almost equal to the price Plaintiffs paid for the entire 38 acres only a couple of years earlier. With regard to this measure of value, the Trial Court specifically found:

based upon the fact that there's no testimony before me concerning the value of the real property and the aesthetic value of that real property and how the real property's been damaged, I do not feel it appropriate at this time to award the $186,300 [sic] which was the first fee.

The evidence in the record on appeal does not preponderate against the Trial Court's finding that the replacement value is not the proper measure of damages in this case.

As we noted above, Plaintiffs also presented evidence of a third measure of damages, the trunk formula method. Mr. Cortese, whom the Trial Court found to be a credible witness, testified that the trunk formula method was an appropriate method for valuing the damages in this case. Mr. Cortese testified that the trunk formula method is "a method used when the plant is normatively too large to be replaced." The evidence shows that these six trees were too large to be replaced at any semblance of a reasonable cost. Mr. Cortese further testified in detail about how he valued each of the six trees using the trunk formula method and arrived at a valuation number for each tree. The record is devoid of any evidence contrary to Mr. Cortese's testimony about this valuation. Nor does any evidence appear in the record on appeal showing that the trunk formula method was an inappropriate method of valuing the damages in this case. Furthermore, Defendants produced no evidence whatsoever of any alternative measure of damages, other than as discussed above.

The evidence in the record on appeal preponderates against any finding that either the timber value or the replacement value is the appropriate measure of damages in this case. The evidence preponderates in favor of a finding that the trunk formula method, the only other measure of damages for which evidence was produced at trial, is the appropriate method of valuing the damages in this case. The record is devoid of any other evidence of the measure of damages.

Given all this, we find and hold that Plaintiffs proved that the trunk formula method was the appropriate method of valuing the damages in this case. We note that Tenn. Code Ann. § 43-28-312 provides for doubling or tripling, when appropriate, only of the current market value of the timber. As Plaintiffs are not awarded the current market value of the timber, they are not entitled to an award of double the amount of their damages. We modify the Trial Court's judgment to award damages to Plaintiffs in the amount of $62,100, and affirm the judgment as so modified.

### Conclusion

The judgment of the Trial Court is modified so as to award damages to Plaintiffs of $62,100 and is affirmed as so modified, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellees, Tony Wolfenbarger and Brenda Wolfenbarger.

_____
D. MICHAEL SWINEY, JUDGE